NISSAN MOTOR
CORPORATION IN U.S.A.

v.

ROYAL NISSAN, INC., Diamond Motors, Inc. and the Chairman and members of the Louisiana Motor Vehicle Commission in their official capacities, Chairman Robert W. Benson, Commissioner Donald E. Shetler, Commissioner J.P. Thibodeaux, Commissioner Willard E. Robertson, Jr., Commissioner W.L. Porter, Commissioner Robert E. Coleman, Sr., Commissioner James J. Bryan, Commissioner Jesse Boyd, Jr., and Commissioner J.F. Winningham.

Civ. A. No. 91–0755.

United States District Court,
E.D. Louisiana.

March 7, 1991.

Cheryl Cunningham, Liskow & Lewis, New Orleans, La., for Nissan Motor Corp. in U.S.A.

William Morvant, E. Wade Shows, Shows, Cohn & Cali, Baton Rouge, La., for Diamond Motors, Inc. and Royal Nissan, Inc.

Adrian F. LaPeyronnie, III, Lisa Miley Geary, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, La., for the Com'rs.

## MEMORANDUM OPINION

MENTZ, District Judge.

Nissan Motor Corporation (Nissan) is seeking a preliminary injunction, preventing the members of the Louisiana Motor Vehicle Commission (the Commission) from holding a scheduled March 11, 1991 hearing, or enforcing and or/issuing any orders, penalties or fines, or from taking any further direct or indirect action of any kind, in connection with or related to the formal complaint against Nissan by defendants Royal Nissan and Diamond Motors.

## I. FACTS

Nissan is licensed by the Louisiana Motor Vehicle Commission to sell Nissan brand automobiles and parts at wholesale to automobile dealers in Louisiana. Defendants Royal Nissan, Inc. (Royal) and Diamond Motors, Inc. (Diamond) (collectively the dealers) are automobile dealers licensed by the Commission to sell Nissan products at retail to consumers in Louisiana. Nissan supplies its products to Royal and Diamond under the terms and conditions of their respective Nissan Dealer Sales and Service Agreements and Standard Provisions to each Dealer Agreement.

In late 1989, after conducting a Market Study of the Baton Rouge Metropolitan Market, Nissan determined that its competitive position was not what it should be and decided that a Nissan dealership should be established in Gonzales, Louisiana. Pursuant to section 1.N of the Standard Provisions, Nissan notified Royal and Diamond of its findings and intentions. In March 1990, Nissan entered into an agreement with Price LeBlanc Nissan, Inc. (Price Le-Blanc), proposing to enter into a Nissan Dealer Sales and Service Agreement with Price LeBlanc in Gonzales.

Nissan notified the dealers of the new dealership. On January 4, 1991, Royal and Diamond filed a complaint with the Commission alleging that the new dealership sought by Nissan would constitute an "act unfair" to the dealers and a partial cancellation of the dealer agreements in violation of Louisiana Revised Statutes section 32:1254(N)(6)(b)–(c). The dealers also claimed that Nissan's action would not "promote the public interest" or "foster and keep alive vigorous competition" as contemplated by Louisiana Revised Statute section 32:1251. A hearing date of March 11, 1991 was set by the Commission.

Nissan seeks an injunction against the members of the Commission in their official capacity. Nissan claims that the Commissioners would be biased in favor of the dealers if the Commission were to hear the dispute between the dealers and Nissan: eight of the Commissioners are automobile dealers and the ninth is a salesman for a dealer. Nissan states that retail automobile dealers have economic, contractual, and institutional interests that compete and are in direct conflict with the interest of the automobile manufacturers. It is possible that a decision in favor of the dealers in this dispute would redound to the personal economic benefit of the Commissioners. Nissan claims that it is constitutionally impermissible to subject a litigant to adjudication before a tribunal that has an economic interest in the outcome of the case.

## II. ELEVENTH AMENDMENT

■ A threshold issue in this case [1] is whether this case is barred under the eleventh amendment, and if not, whether this suit is judiciable under Louisiana Revised State section 32:1253(I), which states that "No member of the board shall be subject to suit or be held liable as an individual in any suit against the board."

Nissan is challenging the constitutionality of the defendant Commissioners hearing this dispute. The claim is that the Commissioners are acting under color of state law, specifically under Louisiana Revised Statutes sections 32:1251–1260, to deprive the plaintiff of its due process rights under the fourteenth amendment of the U.S. Constitution. The plaintiff does not have to allege that the state statute under which the defendants are acting is unconstitutional, but only that the state officials' conduct in carrying out their duties under the statute violates the Constitution.

Although the eleventh amendment bars suit against the state and state officials in federal court without the state's consent, the United States Supreme Court has held that prospective injunctive relief may be granted against a state official in the proper case. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 2311 n. 10, 105 L.Ed.2d 45 (1989); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102–03, 104 S.Ct. 900, 909–10, 79 L.Ed.2d 67 (1984); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1907). According to the *Pennhurst* Court, a suit challenging the constitutionality of a state official's action is not considered a challenge to the state. *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 909. Retroactive relief may not be awarded because such relief would require a response by the state but enjoining future conduct of the official is permitted. *Id.* at 102–03, 104 S.Ct. at 909–910.

In the present case, Nissan is seeking injunctive relief to prevent future action, not to force future action. The Supreme Court has clearly held that a state official, who could not be subject to retroactive monetary relief due to the eleventh amendment, may be subject to prospective injunctive relief. In *Ex Parte Young*, for example, the Attorney General of Minnesota was enjoined from enforcing a statute that allegedly violated the fourteenth amendment. Clearly, the attorney general was as much an agent of the state who carried out the actions of the state as are the Commission members and yet the Supreme Court allowed injunctive relief to be issued against him.

The court finds that the eleventh amendment would not bar the relief requested by the plaintiff. Furthermore, the court finds that Louisiana Revised Statute section 32:1253(I) cannot prevent a suit for prospective injunctive relief in federal court against state officials acting contrary to federal law under section 1983. The eleventh amendment specifically protects the states from being sued without their consent in federal court. Being agents of the state, state officials in their official capacity are likewise protected from suit. To this eleventh amendment immunity, the Supreme Court has carved an exception: state officials allegedly acting contrary to federal law may be prospectively enjoined from future action in federal court pursuant to section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1907). Under the supremacy clause, a state cannot strip its citizens of a right provided under federal law. Therefore, the bar to suit against the members of the Commission cannot extend to suit under section 1983 for prospective injunctive relief.

## III. ABSTENTION

The defendants contend that this court should abstain from exercising jurisdiction

---

1. In a different case, the threshold issue would be whether the court was barred by the anti-injunction act, 28 U.S.C. section 2283, from enjoining a pending state court proceeding. However, the Supreme Court in *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), held that the anti-injunction act does not apply to a section 1983 action such as this.

over the dispute between the dealers and Nissan. Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1959). A federal court should abstain from hearing a case properly before it only in "exceptional circumstances." *Id.* at 189, 79 S.Ct. at 1063. Four abstention doctrines are discussed below.

### A. *Younger* Abstention

■ In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court forbade federal courts from staying or enjoining pending state criminal proceedings except under special circumstances. The *Younger* doctrine has been extended to state civil proceedings by *Gibson v. Berryhill*, 411 U.S. 564, 576–77, 93 S.Ct. 1689, 1696–97, 36 L.Ed.2d 488 (1973). In *Gibson,* the court indicated an exception to the *Younger* abstention doctrine: if the state tribunal that would hear the dispute was unconstitutionally composed, the federal court would not have to defer to the state tribunal. *Id.* at 577, 93 S.Ct. at 1697. That the plaintiff would have an opportunity to appeal the tribunal's decision would not change the *Gibson* court's decision.

The court finds that Nissan has a good chance of prevailing on the merits of its constitutional challenge. Because it may be found that the Commission is unconstitutionally biased, the court will not invoke *Younger* as a rationale for abstention.[2]

### B. *Pullman* Abstention

■ As stated by the plaintiff, the abstention doctrine of *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), requires the federal court to abstain "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of

the pertinent state law." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). *Pullman* applies to cases involving a constitutional challenge the resolution of which is dependent on an unsettled question of state law. *Gibson v. Berryhill*, 411 U.S. 564, 574, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973).

The defendant's claim that Nissan's constitutional challenge would be mooted by a decision in Nissan's favor by the Commission is erroneous. Nissan's constitutional challenge is not a part of the dispute to be adjudicated before the Commission; there are no unsettled questions of state law the resolution of which would resolve the constitutional issue. Regardless of how the Commission rules, the claim that the Commission is biased will not be resolved before the Commission. Even a finding in Nissan's favor would not erase the possibility that the Commission is unconstitutionally composed for its duties. The Commission's potential bias is an issue that must be addressed directly; assuming that a finding in favor of Nissan indicates a lack of bias would require a leap of faith this court is unable to make.

### C. *Burford* Abstention

■ In *Burford v. Sun Oil, Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that a federal court should abstain from exercising its jurisdiction to avoid unnecessary interference with state regulatory schemes. Regulation of the oil and gas industry was held to be clearly within the realm of state law. The state should be allowed to interpret its own law.

The court finds *Burford* to be wholly inapplicable to the present case. Nissan is not challenging Louisiana's scheme to regulate the automobile sales industry. Nissan has raised a constitutional challenge to the current composition of the Commission. This court will not have to interpret state law. Any interference with the state

---

2. The defendants also contend that Nissan must first exhaust its administrative remedies before seeking recourse in the federal courts. However, the court can discern no administrative remedies that Nissan had except to proceed with its hearing before the Commission. This course of action, however, is the very subject of the dispute before the court.

scheme that will result from a finding that the Commission as composed is biased is a necessary interference to correct a constitutional violation.

### D.  *Colorado River* Abstention

■ The doctrine of *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), allows a federal court to abstain under certain circumstances from hearing a dispute if a similar action is pending in state court.  Abstention under *Colorado River* should occur only in the most extraordinary circumstances.  Furthermore, a federal court should abstain only if the state court proceeding will adequately resolve the issues between the parties.  In the present case, not only are exceptional circumstances not present to warrant abstention, there is a serious question as to whether the state forum is competent to resolve the parties' dispute.

## IV.  PRELIMINARY INJUNCTION

■ The remaining question is whether Nissan is entitled to a preliminary injunction, preventing the members of the Commission from hearing the dispute between Nissan and the defendants.  To obtain a preliminary injunction, the plaintiff must show:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Authority of State of Fla. v. Callaway,* 489 F.2d 567, 573 (5th Cir.1974).

The court agrees that there is a substantial likelihood that the Commission as composed will be found to be inherently biased. Although the Commissioners may not have a direct financial interest in preventing Price LeBlanc from opening a Nissan dealership in Gonzales, the court finds that enough of an indirect and institutional financial interest exists to raise a question as to the impartiality of the Commissioners.

The defendant Commissioners' reliance on *Chrysler Corp. v. Texas Motor Vehicle Comm'n,* 755 F.2d 1192 (5th Cir.1985), for support of their position that dealers and manufacturers do not have competing interests is misplaced.  In *Chrysler,* the Fifth Circuit was dealing with a lemon law warranty issue under which purchasers of automobiles were provided with additional remedies against automobile manufacturers.  Chrysler claimed that a motor vehicle commission composed of a majority of dealers could not hear a dispute on the warranty issue with impartiality.  The Fifth Circuit disagreed.  *Id.* at 1199.  The indicia of bias in the *Chrysler* case "point[ed] in opposite directions."  *Id.*  The dealers had equally credible reasons for favoring the manufacturers as the dealers.  The court also emphasized that four of the nine Commission members were not dealers, but were consumers.

In the present case, all nine Commissioners are dealers.  Furthermore, the indicia of bias do not point in opposite directions. The dealers' interest lays in preventing the manufacturer from creating another dealership that cuts into the existing dealers' market area.  This court can think of no interest that the dealers would have in allowing Nissan to limit their market area and to create new competition.

If the injunction is not granted, the plaintiff will be forced to litigate before a potentially biased Commission.  Nissan will have to expend time and effort defending itself and perhaps appealing the Commission's decision.  This expenditure of resources, and the expenditure caused by a decision against it by the Commission, would cause great harm to the plaintiff.  Furthermore, the plaintiff's due process rights would be violated irreparably if the plaintiff is required to litigate before the Commission and it is later determined that the Commission is biased.

The court agrees with the plaintiff that the defendants will suffer no discernible harm if the injunction is granted.  The only injury to be suffered at the time the prelim-

inary injunction is granted is the Commission's inability to hear the Nissan dispute. The defendants are incorrect in claiming that the preliminary injunction will invalidate an entire statutory scheme and bar the Commission from hearing any complaints involving manufacturers and dealers. A preliminary injunction in this case does no more than prevent the Commission from hearing the Nissan dispute.

The court also agrees with the plaintiff that the public interest can only be served by a court determination of whether a state agency is composed in an unconstitutional manner.

Accordingly,

IT IS ORDERED that the motion of the plaintiff Nissan Motor Corporation in U.S.A. for a preliminary injunction be GRANTED. The hearing set for March 5, 1991 at 9:00 a.m. was CANCELED.